**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
ANTHONY PAPPAS FOR CONGRESS, a
political organization created under Title 52 of
the Federal Code, and ANTHONY PAPPAS,
individually,

Plaintiffs,

<b>REPORT AND</b><br><b><u>RECOMMENDATION</u></b>

-against-

CV 18-4199 (JS) (AKT)

JOSEPH LORINTZ, individually and as Supreme
Court Judge of the State of New York, HENRY
KRUMAN, MARIA PAPPAS, TD Bank, N.A.,
and the STATE OF NEW YORK,

Defendants.
-----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.      <u>PRELIMINARY STATEMENT</u>

Individual Plaintiff Anthony Pappas, proceeding *pro se*, ("Anthony Pappas," or "Plaintiff Pappas"), together with his political campaign organization "Anthony Pappas for Congress," (collectively, "Plaintiffs"), commenced this action asserting violations of federal law and Anthony Pappas' constitutional rights.  *See generally* Plaintiffs' Verified Complaint ("Compl.") [DE 1].  These alleged violations arise out of a lengthy and contentious divorce proceeding in New York State Supreme Court between Anthony and Maria Pappas.

According to the Complaint, Defendants Joseph Lorintz, the New York State Supreme Court Justice currently presiding over the divorce proceeding ("Justice Lorintz"), Maria Pappas and her attorney in the divorce proceeding Henry Kruman ("Attorney Kruman"), TD Bank, N.A. ("TD Bank"), and the State of New York (collectively, "Defendants") violated Plaintiffs' federal

constitutional and statutory rights by way of their involvement in the divorce proceeding and their attempts to enforce money judgments against Anthony Pappas in that matter. *See generally* Pls.' Compl. Significantly, Anthony Pappas commenced an action in this Court in 2013 against two New York State Supreme Court Justices, a judicial hearing officer, Attorney Kruman, and Maria Pappas for alleged constitutional violations arising out of the same divorce proceeding ("*Pappas I*"). On August 6, 2014, Judge Seybert granted several defendants' motions to dismiss the complaint in that matter, finding that (1) the court lacked subject matter jurisdiction pursuant to the domestic relations exception to federal court jurisdiction, and (2) even assuming the Court had jurisdiction, Pappas failed to state a claim upon which relief could be granted. *See generally Pappas v. Zimmerman*, No. 13-CV-4883, 2014 WL 3890149 (E.D.N.Y. Aug. 6, 2014).

The following events transpired between the disposition of *Pappas I* and the filing of the instant Complaint: (1) in 2017, Justice Lorintz became the presiding State Supreme Court Justice in the divorce proceeding following Justice Zimmerman's recusal, Compl. ¶¶ 21(a)-(b); (2) Anthony Pappas announced his candidacy for the United States Congress as a Republican and appeared on the ballot in November 2018, *id*. ¶ 2; and (3) prior to the election, a restraint was placed on Pappas' campaign bank account in an attempt to enforce a previously entered money judgment in the divorce proceeding. *See id*. ¶ 21(c). The allegations and claims in the instant action are primarily based on legal theories and arguments asserted unsuccessfully in *Pappas I*, framed in the context of these recent events. Specifically, Anthony Pappas alleges continued "bias" in the divorce proceeding, which resulted in money judgments against him, and which, through enforcement of the judgments as well as through negative media attention, contributed to his electoral loss in November 2018. *See generally id.* Within this framework, the instant Complaint asserts claims for violation of Anthony Pappas' rights under the First

Amendment to the United States Constitution, his procedural and substantive due process rights, his equal protection rights, and federal election law.  *See generally id*.

On November 27, 2018, the New York State Attorney General's Office, representing Justice Lorintz and the State of New York, filed the first of the instant motions to dismiss Plaintiffs' Complaint, for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), as well as for a limited filing injunction.  *See generally* New York State's Memorandum of Law in Support of its Motion to Dismiss ("State's Mem.") [DE 32-1]; *see also* New York State's Memorandum in Reply ("State's Reply") [DE 42].  Several days later, on November 30, 2018, TD Bank filed a motion to dismiss the claims against it for failure to state a claim pursuant to Rule 12(b)(6).  *See generally* TD Bank's Memorandum in Support of its Motion to Dismiss ("TD Bank's Mem.") [DE 33-1]; *see also* TD Bank's Memorandum in Reply ("TD Bank's Reply") [DE 40].  Also on November 30, 2018, Maria Pappas and her attorney Henry Kruman filed a motion to dismiss the Complaint for failure to state a claim, pursuant to Rule 12(b)(6), as well as for a limited filing injunction.  *See generally* Henry Kruman and Maria Pappas' Memorandum of Law in Support of their Motion to Dismiss ("Kruman Mem.") [DE 34-2].  On December 28, 2018, Plaintiffs filed opposition to the motions to dismiss and a cross-motion to amend the Complaint "to add facts arising since its filing;" the opposition also seeks "an order of partial summary judgment."  Plaintiffs' Notice of Cross-Motion [DE 36]; *see* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss and in Support of the Cross-Motion ("Pls.' Opp'n.") [DE 38]; *see also* Pappas' Declaration in Support of the Opposition and Cross-Motion ("Pappas' Decl.") [DE 37].

Judge Seybert referred the above pending motions to this Court on April 9, 2019 for a Report and Recommendation as to whether the motions should be granted.  *See* Electronic Order

3

dated April 9, 2019. Having considered the arguments of the parties, including all of the written submissions referenced here, and for the reasons set forth below, this Court respectfully recommends to Judge Seybert that (1) the pending motions to dismiss be GRANTED, (2) Plaintiffs' cross-motion to amend the Complaint be DENIED, and (3) Anthony Pappas be directed to show cause why a filing injunction should not be entered against him.

## II.    BACKGROUND

### A.    Judge Seybert's 2014 Decision in *Pappas I*

The Court begins by addressing Judge Seybert's August 6, 2014 decision in *Pappas I*, which granted several motions to dismiss Pappas' claims. As Judge Seybert observed, *Pappas I* involved

> an underlying divorce proceeding commenced by M[aria] Pappas against Plaintiff on December 8, 2004. . . . The Complaint alleges a series of purported constitutional violations stemming from the divorce proceedings. For example, Plaintiff alleges that M. Pappas' attorney, defendant Kruman, asserted baseless accusations against Plaintiff, allowed M. Pappas to testify to mistruths, and charged exorbitant fees for which Plaintiff ultimately became responsible.

*Pappas I*, 2014 WL 3890149, at *1. Anthony Pappas also brought claims against "Justice Falanga, [Judicial Hearing Officer] Gartenstein, and Justice Zimmerman. . . . JHO Gartenstein presided over certain aspects of the case until his recusal in 2010. Justice Falanga then presided over the divorce proceedings until his retirement around December 2011. Justice Zimmerman then succeeded Justice Falanga." *Id*. (internal citations omitted). Pappas alleged bias against him in the divorce proceeding, and, specifically, that "the Judicial Defendants adopted M[aria] Pappas' recitation of the facts in various instances and generally favored M[aria] Pappas, placing the 'female litigant and her attorney in a win-win situation through never ending litigation.'" *Id*.

4

Plaintiff Pappas also pointed to a "gag order" as further evidence of this bias.  The "gag order" was a directive from Justice Falanga, which stated as follows:

> I am admonishing you right now, you are not to communicate with anybody inside the court system, outside the court system, about how you feel you were being treated or anything like that. If you feel I am violating your right to free speech, you have the absolute right to feel that way and do whatever you feel is appropriate. If I decide to hold you in contempt, we'll cross that bridge when we come to it. Do you understand?

*Id*.  Anthony Pappas alleged that the bias he was subjected to throughout his divorce proceeding and his general treatment during those proceedings violated his First Amendment rights, due process rights, and equal protection rights.  *Id*. at *2.   He also argued that such conduct constituted retaliation.  *Id*.

      After reviewing the alleged facts, Judge Seybert explained that the "domestic relations" exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees," and further applies to divest the court of subject matter jurisdiction where an action "involves issues 'directly related' to the [divorce, alimony, or child custody] state court proceedings."  *Pappas I*, 2014 WL 3890149, at *3-*4.  As Judge Seybert stated, "the fact that Plaintiff styles his Complaint in terms of constitutional issues is of no moment. . . . His allegations would require this Court to become embroiled in the divorce proceedings and his submissions make clear that he seeks to undo what has occurred with respect to his divorce."  *Id.* at *4 (internal citations omitted).  Accordingly, Judge Seybert concluded the court lacked subject matter jurisdiction to entertain Anthony Pappas' claims.  *Id*.  In addition to concluding that the domestic relations exception deprived the court of subject matter jurisdiction, Judge Seybert found that "Plaintiff's claims against the Judicial Defendants fail on the grounds of judicial immunity and the Eleventh Amendment, and his claims against Kruman and M[aria] Pappas fail because they are not state actors."  *Id.*

5

Anthony Pappas' claims were dismissed with prejudice and *Pappas I* was closed on August 15, 2014.  On August 20, 2014, Anthony Pappas filed a notice of appeal of Judge Seybert's decision granting the motions to dismiss.  The United States Court of Appeals for the Second Circuit issued its Mandate on January 13, 2015 denying and dismissing Pappas' appeal on the grounds that the appeal lacked an arguable basis in fact or law.

**B.**     **Facts Alleged in Plaintiffs' Initial Complaint Relative to the Instant Action**

The Court next considers the facts alleged in Plaintiffs' initial pleading in this action. The Court accepts these allegations as true for purposes of the pending motions to dismiss. *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013).  Further, *pro se* filings like Anthony Pappas' Complaint are liberally construed to raise the strongest arguments they suggest.  *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017).  The Court will not, however, recite the numerous conclusory assertions, legal arguments, and *ad hominem* invective which permeate the pleadings, except where needed for illustration.

Anthony and Maria Pappas were married on July 25, 1982 and subsequently had three children.  Compl. ¶ 12.  On December 8, 2004, Maria Pappas commenced an action for divorce in New York State Supreme Court.  *Id*.  Recognizing Judge Seybert's disposition of *Pappas I* on the basis of the domestic relations exception, Anthony Pappas alleges that since Judge Seybert's 2014 decision, "circumstances and events have arisen which take this complaint outside the scope of the Domestic Relations Exemption, related abstention practices and preclusion rules while necessitating emergency and long term relief sought here."  *Id*. ¶ 20.   He claims that "[t]he state divorce judge (Zimmerman) named in the 2013 federal case disqualified herself in March 2017 without motion or explanation . . . leaving the litigant subject to speculation regarding the extent and duration of any undisclosed prejudice."  *Id*. ¶ 21(a).  The Complaint states that "Judge

6

Zimmerman's replacement, defendant Judge Joseph Lorintz, has continued the systematic prejudice (or bias) against Pappas in retaliation for his ongoing criticisms of divorce court." *Id*. ¶ 21(b). Specifically, Anthony Pappas asserts that Justice Lorintz has "ignored requests for an explanation or justification for money judgments that remain in effect despite funds restrained, seized or readily available for immediate satisfaction," and has "restrained monies needed for personal living expenses and lawyer fees." *Id*. Plaintiff Pappas claims that "defendant Lortintz has entered orders favoring defendants [Maria] Pappas and Kruman while denying motions to lift, reduce or modify excessive, punitive and retaliatory orders against Pappas." *Id*. ¶ 21(c). Relatedly, the Complaint states that "[t]his malicious or reckless process has now led to a restraint upon the candidate's separate bank account at the defendant TD Bank." *Id*.

"Among other retaliatory misconduct" of which Plaintiff Pappas complains is the "2011 gag order issued by Judge Anthony Falanga which remains in effect." Compl. ¶ 21(d). Pappas alleges that when he decided to run for Congress, his divorce was placed under public scrutiny and he "was subjected to media inquiries" regarding this "defamatory" order and other aspects of his divorce proceeding *Id.* Additionally, the Complaint states that by refusing to grant Pappas' motions to vacate the 2011 gag order, Justice Lorintz has placed him and his campaign staff at risk of arrest and/or confinement for contempt, in addition to chilling free speech. *Id*. ¶ 21(h)-(i).

Anthony Pappas summarizes his claims in the following manner. As to his "First Cause of Action: First Amendment," Pappas contends that

> the defendants have violated [his] rights of free speech and court access under the First Amendment to wit: 1) through imposition of a prior restraint by defendant Judge Anthony Falanga on January 19, 2011 which was neither modified nor vacated to the present day, and 2) punitive measures undertaken on a variety of pretexts for offensive expressions made by plaintiff Pappas from time to time during the course of this maliciously protracted divorce case.

Compl. ¶ 24.  As to his "Second Cause of Action: Election Law," Pappas states that

> [u]nder Title 52 of the United States Code (Election Law), the Federal Election Commission has been granted exclusive jurisdiction to decide campaign funding and expenditure violations. However such grant of authority does not extend to broader civil rights violations of the kind at issue here or involuntary applications of donated campaign funds to the personal use of a divorce lawyer and ex spouse.

*Id*. ¶ 28.  Plaintiff thus alleges that the restraint on his campaign account supports a claim for "violation of federal election law."  *Id*. ¶ 29.  As to his "Third Cause of Action: Due Process," Plaintiff Pappas states that he was deprived of both substantive and procedural due process in his divorce proceeding because he "was denied his right to a rational, orderly and timely court proceeding before a neutral and detached magistrate or judge.  This bias inflicted against plaintiff was both systematic in the [*sic*] New York's divorce courts and individually among the presiding judge named therein."  *Id*. ¶ 31.  As to his "Fourth Cause of Action: Equal Protection,"  Pappas contends that "[t]he matrimonial section of New York's court system promotes inherently biased and discriminatory practices against husbands, fathers and male litigants.  Women counterparts are encouraged to file false petitions under oath under a 'better safe than sorry' doctrine of law in matters of domestic violence."  *Id*. ¶ 35.  He thus claims his equal protection rights were violated by operation of New York matrimonial law and its application in the state court proceeding.[1]  *Id*.

### C.    Relevant Procedural History

As noted, *Pappas I* was closed on August 15, 2014.  The Second Circuit denied Pappas' appeal of Judge Seybert's 2014 decision dismissing his claims on January 13, 2015.  Prior to commencing the instant action, Anthony Pappas moved pursuant to N.Y. C.P.L.R. Article 78 to

---

[1]    The Complaint also lists a "Fifth Cause of Action" – a claim for "Declaratory and Injunctive Relief."  Compl. ¶¶ 35-36.

compel Justice Lorintz to vacate the 2011 gag order in the Pappas' underlying divorce proceeding. *See* DE 34-9. The New York State Supreme Court, Appellate Division, Second Department denied Plaintiff Pappas' petition in an Order dated November 1, 2017. *See id*.

Anthony Pappas filed the Complaint in this action on July 24, 2018. *See* DE 1. That same day, he filed an unsigned Order to Show Cause and supporting affidavit which sought the restraint of "all enforcement of orders notices, executions and information subpoenas placed upon a campaign account in TD Bank" and the lifting of the 2011 gag order. *See* DE 3. On August 14, 2018, TD Bank filed a response to the Order to Show Cause, taking no position as to the relief Pappas sought. *See* DE 16. Attorney Kruman filed opposition to Plaintiffs' Order to Show Cause on August 17, 2018, *see* DE 20, and the State of New York filed its opposition on August 27, 2018. *See* DE 26. Judge Seybert declined to sign Plaintiffs' Order to Show Cause on September 4, 2018, and otherwise denied the relief Pappas sought. *See* Electronic Order dated September 4, 2018. Judge Seybert ruled that the Anthony Pappas could not challenge the restraining notice in federal court, but rather must seek such relief in New York State Supreme Court, the court which issued the notice. *See id.* Judge Seybert also noted that "the Court has serious concerns regarding the existence of subject matter jurisdiction over this action, and as a result, finds that Plaintiff has not demonstrated a likelihood of success or sufficiently serious questions going to the merits of his claims."[2] *Id*.

---

[2] Anthony Pappas subsequently filed a petition of mandamus with the United States Court of Appeals for the Second Circuit. On January 17, 2019, the Second Circuit issued its Mandate denying Pappas' petition because he failed to "demonstrate that exceptional circumstances warrant the requested relief." DE 41. Pappas then filed a petition for a writ of certiorari with the United States Supreme Court on February 27, 2019, seeking review of the Second Circuit's denial of his mandamus petition. On May 20, 2019, the Supreme Court denied his petition.

On October 30, 2018, Judge Seybert granted Defendants in this action leave to move to dismiss the Complaint. *See* Electronic Order dated October 30, 2018. On November 1, 2018, Magistrate Judge Brown recused himself and the case was reassigned to this Court. *See* DE 31. The State of New York, TD Bank, and Attorney Kruman filed their motions to dismiss on between November 27 and November 30, 2018. *See* DE 32-34. In response to the several motions to dismiss, Plaintiff Pappas filed an opposition and cross-motion to amend his Complaint on December 28, 2018, "to add facts arising since its filing." DE 36. The opposition also seeks "an order of partial summary judgment." *Id*. TD Bank and the State of New York subsequently filed reply memoranda in further support of their motions to dismiss. *See* DE 40, 42.

The pending motions were referred by Judge Seybert to this Court for a Report and Recommendation as to whether the motions should be granted on April 9, 2019. *See* Electronic Order dated April 9, 2019.

## III.   ARGUMENTS OF THE PARTIES

The Court briefly summarizes the contentions of the parties before addressing the merits of their respective arguments.

### A.   The State of New York

In its motion, the State of New York argues that *res judicata* binds Anthony Pappas to Judge Seybert's determination in *Pappas I*, namely, that this Court lacks subject matter jurisdiction to entertain his claims pursuant to the domestic relations exception to federal court jurisdiction. *See* State's Mem. at 4-5. No intervening action or event between dismissal of *Pappas I* and the filing of the instant Complaint is sufficient to alter this conclusion according to the State. Likewise, the State contends that Judge Seybert's other rulings – *i.e.*, that even if the

10

Court had subject matter jurisdiction over Plaintiff Pappas' claims, various forms of immunity preclude the relief he seeks – are similarly applicable to the instant litigation. *See id.* at 8. The State further seeks a limited filing injunction, notwithstanding the absence of subject matter jurisdiction. *See id.* at 9-13.

In his reply papers, counsel for the State of New York makes several additional arguments: (1) Justice Lorintz was not personally involved in the enforcement action of the money judgment and therefore cannot be held liable under Section 1983; (2) the federal election law does not afford Anthony Pappas a private right of action; and (3) any potential remedies related to the purported "gag order" lie in New York State Supreme Court, not this Court. *See generally* State's Reply. The State also maintains that Plaintiffs' proposed Amended Complaint would be futile and that his motion to amend should therefore be denied. *See generally id.*

### B.    TD Bank

In its motion to dismiss, TD Bank first asserts that under New York Law, it is a custodian of accounts and is required by law to comply with a judicial restraining notice. As a result, on the facts here, its actions were proper and no claim may lie against it. *See* TD Bank's Mem. at 5-6. TD Bank next argues that because it is a private entity rather than a state actor, Plaintiffs' Section 1983 claims cannot lie against it. *See id.* at 6-7. As a third argument, TD Bank contends, like the State of New York, that Plaintiffs' federal election law claims are not authorized by any private right of action. *See id.* at 7-8. Finally, TD Bank argues that Plaintiffs' purported breach of contract claim, along with any negligence claim Plaintiff Pappas may be attempting to raise, is barred by the Account Agreement, which obliges TD Bank to comply with any legitimate judicial restraint. *See id.* at 8-10.

11

In addition to elaborating further on the above arguments, TD Bank asserts in its reply memorandum contends that Plaintiff's request to amend the Complaint should be denied because any such amendment would be futile.  *See* TD Bank's Reply at 8-10.  TD Bank also contends that Plaintiffs' request for "partial summary judgment" should be denied as moot, premature, and procedurally improper.  *See id*. at 10.

### C.    Maria Pappas and Attorney Kruman

Although Defendants Maria Pappas and her Attorney Henry Kruman purport to seek dismissal of the Complaint pursuant to Rule 12(b)(6) for failure to state claim, their first argument is that the Court lacks subject matter jurisdiction based on Judge Seybert's decision in *Pappas I*. *See* Kruman Mem. at 4-5.  The Court therefore construes this portion of the motion to be brought pursuant to Rule 12(b)(1).  These Defendants next argue that any Section 1983 claim is not actionable against them because they are not state actors.  *See id*. at 6-9.  Maria Pappas and Attorney Kruman also claim, like the other Defendants, that no private right of action exists to sustain Plaintiffs' election law claims.  *See id.* at 9.

In support of their motion for a limited filing injunction, these Defendants state that Anthony Pappas "has engaged in vexatious and repetitive litigation repeatedly raising and re-raising issues determined in prior proceedings, including the application of the domestic relations exception in Pappas I."  Kruman Mem. at 10.  They claim that there is "no doubt a monetary sanction in this action would be inadequate," since "Mrs. Pappas has already been awarded money judgments which remain unsatisfied."  *Id*.

### D.    Plaintiffs' Opposition and "Cross-Motion"

In opposition to the several motions to dismiss, Plaintiffs first recite what they entitle a "Counter-Statement of Facts" in which they repeat many of the same factual assertions raised in

the Complaint. *See* Pls.' Opp'n. at 1-6. This appears to be Anthony Pappas' attempt to re-characterize what he sees as Defendants' mischaracterization of the allegations in the pleadings. In the "Argument" section of the opposition, Plaintiffs' primary assertions can be distilled to the following: (1) a second levy on the campaign account was made after this action was commenced; therefore, (although it is by no means clear) leave to amend should be granted; (2) an implied private right of action exists in the federal election law which authorizes the election law claims; and (3) the domestic relations exception does not apply to this case. *See id.* at 6-12. As to this last point, the crux of Plaintiffs' argument is that "jurisdiction in state court is not being exercised in good faith." *Id*. at 12.

Plaintiffs' opposition papers are docketed as a cross-motion to amend.[3] *See* DE 36, 38. In the "Notice of Cross Motion," docketed at DE 36, Plaintiff Pappas states he will seek "an order granting leave to amend the Verified Complaint to add facts arising since its filing" and "an order of partial summary judgment." DE 36. Notwithstanding these characterizations, no proposed amended complaint was filed with Plaintiffs' papers.

---

[3]   The Court notes that Plaintiff Pappas submitted a letter dated June 27, 2019 with what appears to be news articles from several internet sites regarding criminal charges brought against a congressional candidate in California for allegedly using campaign funds to finance extramarital affairs. *See* DE 45. According to Mr. Pappas, this "new development supports [his] contention" as to how campaign funds can properly be used, contending that the seizure of some of his campaign funds by the judge presiding over his divorce proceeding was improper. The Court points out that (1) Plaintiff Pappas did not seek an authorization to submit this material after the motions here were already fully briefed; (2) the factual underpinnings of the case in California are clearly distinguishable from the facts in this case; (3) the submission does not contain any ruling or decision from a federal court in California for the Court to assess; and (4) this Court is not bound by a decision from another federal district court even if one existed here. The Court finds the submission is not relevant to this case and provides no support for the arguments asserted in this matter by the Plaintiffs.

## IV.    DISCUSSION

*Pro se* filings like Plaintiffs' Complaint are to be liberally construed.  *McLeod*, 864 F.3d at 156; *Shin v. Queens Hosp. Ctr. in Jamaica*, No. 14-CV-7237, 2014 WL 7422664, at *3 (E.D.N.Y. Dec. 31, 2014).  "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  The Court must therefore "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'"  *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 890 (2d Cir. 1994)); *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007).  *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law."  *Lomax v. Aegis Funding Corp.*, No. 9-2321, 2010 WL 1633440, at *2 (E.D.N.Y. Apr. 19, 2010) (quoting *Iwachiw v. N.Y. City Bd. of Educ.*, 194 F. Supp. 2d 194, 202 (E.D.N.Y. 2002)).  Likewise, "mere conclusions of law or unwarranted deductions need not be accepted" by the Court.  *Alston v. Sebelius*, No. 13-CV-4537, 2014 WL 4374644, at *5 (E.D.N.Y. Sept. 2, 2014).

That being said, the general standards of review under Rule 12(b)(1) and 12(b)(6) remain applicable.  Where, as here, defendants move to dismiss a complaint based on Rule 12(b)(1) as well as other grounds, "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined."  *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F. 2d 674, 678 (2d Cir. 1990) (quoting 5 C. Wright and A. Miller, *Federal Practice and Procedure*, § 1350, p. 548 (1969)); *see Thompson v. Ocwen Fin. Corp.*, No. 3:16-cv-01606, 2018 WL 513720, at *2 (D. Conn.  Jan. 23, 2018) (explaining it is well established

that "federal courts should ordinarily resolve any doubts about the existence of federal subject

matter jurisdiction prior to considering the merits of a complaint") (citing *Rhulen*, 896 F. 2d at

678); *Calverton Hills Homeowners Assn., Inc. v. Nugent Bldg. Corp.*, 2:17-CV-03916, 2017 WL

6598520, at *4 (E.D.N.Y. Dec. 26, 2017) (same). The Court will therefore begin its analysis by

addressing the argument raised by the Defendants that the Court lacks subject matter jurisdiction

to entertain Plaintiffs' claims.

### A.    Subject Matter Jurisdiction

#### 1.    *Standard of Review*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v.

United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing FED. R. CIV. P. 12(b)(1)). "The standard

of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and

under 12(b)(6) for failure to state a claim are substantively identical." *Davis v. JP Morgan

Chase Bank*, No. 14-CV-6263, 2016 WL 1267800, at *3 (S.D.N.Y. Mar. 30, 2016). Unlike the

resolution of a Rule 12(b)(6) motion to dismiss, however, a court resolving a Rule 12(b)(1)

motion to dismiss may consider evidence outside the pleadings. *Makarova*, 201 F.3d at 113

(citing *Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986)). Moreover, "[a]

plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the

evidence that it exists." *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner,* 82 F.3d 560, 562

(2d Cir. 1996)); *Parker-Leon v. Middle Vill. Preparatory Charter Sch.*, No. 17-CV-4548, 2019

WL 2394211, at *2 (E.D.N.Y. June 6, 2019) (explaining that "jurisdiction must be shown

affirmatively, and that showing is not made by drawing from the pleadings inferences favorable

to the party asserting it") (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d

Cir. 1998)); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.").

### 2.   *Res Judicata:  Claim & Issue Preclusion*

#### a.   **Legal Principles**

The first step in the subject matter jurisdiction analysis requires the Court to determine whether the principles of *res judicata* bar Plaintiffs' claims in the instant action based on Judge Seybert's determination in *Pappas I* that subject matter jurisdiction was lacking.  *See George v. Storage Am.*, No. 13 CIV. 9226, 2014 WL 1492484, at *3 (S.D.N.Y. Mar. 6, 2014) ("Because another court has already addressed the issue of subject matter jurisdiction in a nearly identical Complaint, I first consider whether *res judicata* bars reconsideration of the issue and requires dismissal for lack of jurisdiction."), *objections overruled*, No. 13 CIV. 9226, 2014 WL 1494116 (S.D.N.Y. Apr. 16, 2014).  "The federal common law doctrine of *res judicata* incorporates two separate types of preclusion: claim preclusion and issue preclusion."  *Bank v. Spark Energy Holdings, LLC*, No. 13-CV-6130, 2014 WL 2805114, at *3 (E.D.N.Y. June 20, 2014) "Under the doctrine of *res judicata,* otherwise known as claim preclusion, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action.'"  *Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc.*, 757 F. Supp. 2d 218, 224 (E.D.N.Y. 2010) (emphasis in original) (quoting *Flaherty v. Lang,* 199 F.3d 607, 612 (2d Cir. 1999)).  "Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the

prior judgment,' even if the issue recurs in the context of a different claim." *Wyly v. Weiss*, 697 F.3d 131, 140 (2d Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)).

"It has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal." *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 89 (2d Cir. 1997) (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982)); *see Stone v. Williams*, 970 F.2d 1043, 1057 (2d Cir. 1992) (observing that "principles of preclusion apply equally to jurisdictional matters"). While a dismissal for lack of subject matter jurisdiction is generally not considered a dismissal "on the merits," and is therefore not accorded *res judicata* effect, *Clarex Ltd. v. Natixis Securities America LLC,* No. 12 Civ. 722, 2012 WL 4849146, at *9 (S.D.N.Y. Oct. 12, 2012); *Carruthers v. Flaum*, 388 F. Supp. 2d 360, 378 (S.D.N.Y. 2005), "a finding of lack of subject matter jurisdiction is *res judicata* as to that particular issue in subsequent actions between the parties." *George*, 2014 WL 1492484, at *3 (quoting *Barclay's Ice Cream Co. v. Local No. 757 of Ice Cream Drivers & Employers Union,* No. 79 Civ. 1611, 1979 WL 1710, at *2 (S.D.N.Y. Sept. 7, 1979)).

In order for claim preclusion to apply, a defendant must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y. City Dep't of Corr.,* 214 F.3d 275, 284-85 (2d Cir. 2000) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *Koenig v. City of New Haven*, No. 16-CV-514, 2017 WL 631190, at *2 (D. Conn. Feb. 15, 2017). By contrast, "[i]n order to invoke the doctrine of issue preclusion, defendants must establish that '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the

previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Bank*, 2014 WL 2805114, at *4 (quoting *Uzdavines v. Weeks Marine, Inc.,* 418 F.3d 138, 146 (2d Cir. 2005)).

### b.    Application to the Facts

Here, the instant action does not involve the same parties as *Pappas I*, and claim preclusion is therefore inapplicable.  Similarly, not all of the claims asserted in the instant action could have been asserted in *Pappas I*.  In particular, Plaintiffs' claims in connection with the campaign account could only have been raised after the account was opened in connection with Anthony Pappas' 2018 congressional campaign.  Given the information provided by the parties, the Court concludes the account was opened *after* Judge Seybert issued her decision in *Pappas I* on August 6, 2014.  Id.

The doctrine of issue preclusion presents a different result in the instant circumstances. As noted previously, "[t]he doctrine of issue preclusion precludes relitigation of issues determined in an earlier ruling on a jurisdictional question."  *O'Callaghan v. New York Stock Exch.*, No. 12 CIV. 7247, 2013 WL 3984887, at *10 (S.D.N.Y. Aug. 2, 2013), *aff'd*, 563 Fed. App'x 11 (2d Cir. 2014).  A previous jurisdictional ruling has *res judicata* effect under the doctrine of issue preclusion "only if the identical jurisdictional issue is presented in the subsequent case."  *Bank*, 2014 WL 2805114, at *6; *CIT Bank, N.A. v. Jach*, No. 15-CV-5814, 2019 WL 1383850, at *3 (E.D.N.Y. Mar. 27, 2019).  Where the jurisdictional issue is identical and is litigated in a manner affording the party asserting jurisdiction a full and fair opportunity to be heard, the elements of issue preclusion have been satisfied.  *See Bank*, 2014 WL 2805114, at *4.  As explained below, the Court determines that the elements of issue preclusion have been

satisfied here.  As a result, the instant action is bound by Judge Seybert's determination in

*Pappas I* that the Court lacks subject matter jurisdiction to entertain Plaintiffs' claims pursuant to

the domestic relations exception.

First, the Court looks to the precise contours of the jurisdictional issues presented in both

*Pappas I* and the instant action, which requires a review of the parties and claims in both actions.

In *Pappas I*, Anthony Pappas individually raised the following causes of action:  (1) violation of

his First Amendment free speech rights against judicial defendants State Supreme Court Justice

Hope Schwartz Zimmerman, State Supreme Court Justice Anthony Falanga, and Judicial

Hearing Officer Stanley Gartenstein "through the imposition of a prior restraint by defendant

Judge Anthony Falanga on January 19, 2011 which was neither modified nor vacated to the

present day;" (2) "retaliation" against the same judicial defendants as well as Maria Pappas and

Attorney Kruman (*i.e.*, all defendants), acting in concert; (3) violation of his due process rights

stemming from the defendants' failure to provide him "a rational, orderly and timely court

proceeding before a neutral and detached" judge in connection with his divorce; and (4) violation

of his equal protection rights because the state court system allegedly favors female litigants over

male litigants.  *Pappas I*, 2014 WL 3890149, at *2.  Anthony Pappas also sought declaratory and

injunctive relief.  *Id*.  As noted, the parties in *Pappas I* were Pappas himself individually, three

state court judicial defendants, Maria Pappas, and Attorney Kruman.  *See generally id*.

In the instant action, Plaintiffs (now Pappas individually and his campaign organization)

assert the following causes of action:  (1) violation of Anthony Pappas' First Amendment free

speech rights "through imposition of a prior restraint by defendant Judge Anthony Falanga[4] on

---

[4]  The Court notes that "Judge Anthony Falanga" is not named as a defendant in the instant action.

January 19, 2011," "which was neither modified  nor vacated to the present day," and other bases associated with with Pappas' divorce proceeding; (2) violation of federal election law stemming from the restraint on Anthony Pappas' campaign bank account, presumably against all Defendants; (3) violation of Anthony Pappas' due process rights stemming from the Defendants' failure to provide him "a rational, orderly and timely court proceeding before a neutral and detached" judge in connection with his divorce; and (4) violation of Anthony Pappas' equal protection rights in that "[t]he matrimonial section of New York's court system promotes inherently biased and discriminatory practices against husbands, fathers and male litigants." Compl. ¶¶ 24-35.  As in *Pappas I*, Plaintiffs here seek declaratory and injunctive relief.  *See id.* ¶¶ 35-36.  With respect to the parties, in this action Anthony Pappas has added his campaign organization as a plaintiff, substituted State Supreme Court Justice Joseph Lorintz for the three judicial defendants in *Pappas I*, and added TD Bank as a defendant, while retaining Maria Pappas and Attorney Kruman as defendants.  *See generally* Compl.

Comparing *Pappas I* and this action, the Court finds that notwithstanding (i) the addition of Anthony Pappas for Congress (an organization presumably controlled by Pappas himself) as a plaintiff, (ii) the substitution of a single judicial defendant for three judicial defendants, (iii) the addition of TD Bank as a defendant, and (iv) the substitution of a claim of "retaliation" for a purported claim under the federal election law as the second cause of action, the same jurisdictional issue that was presented to and decided by Judge Seybert in *Pappas I* presents itself here.  Specifically, the gravamen of the current lawsuit is Anthony Pappas' contention that his rights have been violated in the state court divorce proceeding.  Based on that contention, the instant suit is "directly related" to that proceeding such that, like *Pappas I*, it "invites the federal court to 're-examine and re-interpret' the evidence" in that matter.  *Pappas I*, 2014 WL 3890149,

at *4 (quoting *Schottel v. Kutba,* No. 06-CV-1577, 2009 WL 230106, at *1 (2d Cir. 2009) and *McArthur v. Bell,* 788 F.Supp. 706, 709 (E.D.N.Y. 1992)).  This conclusion is self-evident from the Complaint's first, third, and fourth causes of action:  they are identical to the first, third, and fourth causes of action in *Pappas I*, often phrased verbatim.  The fact that the parties are slightly different does not alter the Court's conclusion.  These claims remain asserted, as they were in *Pappas I*, against the judicial system and at least one of its officers, as well as against Maria Pappas and Attorney Kruman, for alleged injuries suffered by Anthony Pappas stemming from his divorce proceeding.  Because resolution of these claims "would require this Court to become embroiled in the divorce proceedings and his submissions make clear that [Anthony Pappas] seeks to undo what has occurred with respect to his divorce," *Pappas I*, 2014 WL 3890149, at *4, the claims present the same jurisdictional issue decided by Judge Seybert.

Anthony Pappas' substitution of a claim of "retaliation" for a claim purportedly brought pursuant to federal election law does not fundamentally alter the nature of the jurisdictional issue before the Court here.  With respect to his federal election law claim, Pappas raises the following allegations:  (1) Justice Lorintz "acted under color of state law and exceed his authority to impair rights secured to the plaintiff under the United States Constitution and federal Election Law," Compl. ¶ 6; (2) Attorney Kruman and Maria Pappas acted in concert with other defendants "to impair rights secured to the plaintiff under the United States Constitution and Election Law," *id*. ¶¶ 7, 8; (3) "[u]nder Title 52 of the United States Code (Election Law), the Federal Election Commission has been granted exclusive jurisdiction to decide campaign funding and expenditure violations.  However, such express grant of authority does not extend to . . . involuntary applications of donated campaign funds to the personal use of a divorce lawyer and ex-spouse," *id*. ¶ 28; and (4) because "[n]o case or precedent has been uncovered to provide independent

guidance" as to whether the Federal Election Commission has "express or implied authority to represent a victimized divorce litigant or to otherwise act upon state judges engaged in divorced proceedings . . . such federal jurisdiction, jurisdictional disputes and remedies can only be decided by this Court." *Id.* ¶ 29. In the Court's view, these allegations make clear that Anthony Pappas' grievances, although framed in terms of "the federal election law," are, in reality, another form of his grievances against what he perceives to be a biased state court system and a flawed divorce proceeding outcome. As such, his "federal election law" cause of action is part and parcel of his other three claims and presents no distinct jurisdictional issue for this Court to decide. *See* Pls.' Opp'n. at 5 (asserting that his electoral loss was due to the "the maliciously protracted divorce" proceedings).

Similarly, the addition of TD Bank as a defendant does not fundamentally alter the jurisdictional issue presented by the instant litigation. There are only a few references to TD Bank in Plaintiffs' Complaint. The only two references which shed any light on the purported connection between TD Bank and Plaintiffs' claims are that (1) Attorney Kruman "caused a property execution to be served on TD Bank, N.A., which thereby restrained the campaign account of said organization," Compl. ¶ 7; and (2) "Judge Zimmerman's replacement, defendant Judge Joseph Lorintz, has continued the systematic prejudice (or bias) against Pappas in retaliation for his ongoing criticisms of divorce court. . . . This malicious or reckless process has now led to a restraint upon the candidate's separate bank account at the defendant TD Bank . . . ." *Id.* ¶¶ 21(b)-(c). These allegations reflect that, similar to the purported "federal election law" claim, the conduct of TD Bank of which Anthony Pappas complains is the direct result and consequence of the Pappas' divorce proceedings. Inclusion of TD Bank as an additional defendant, therefore, does not alter the jurisdictional issue before the Court.

Having determined that the same jurisdictional issue presented to and decided by Judge Seybert in *Pappas I* is presented here, the Court further finds that Anthony Pappas had a full and fair opportunity to litigate this issue in *Pappas I*. Moreover, it is evident that "resolution of the [jurisdictional] issue was necessary to support a valid and final judgment" in *Pappas I*. *Bank*, 2014 WL 2805114, at *4. Accordingly, the elements of issue preclusion have been satisfied. *See id*. As a result, Plaintiffs – and this Court – are bound by Judge Seybert's determination in *Pappas I* that this Court lacks subject matter jurisdiction to entertain Plaintiffs' claims pursuant to the domestic relations exemption. *See, e.g.*, *Hughley v. United States*, No. 11 CIV. 3805, 2011 WL 6057743, at *2 (S.D.N.Y. Dec. 2, 2011) (explaining that where a prior judgment "precludes any relitigation of the threshold issues of justiciability and subject matter jurisdiction previously determined by the Court," such "jurisdictional defects bar Petitioner's claims in the Amended Complaint").

### 3.    *The Domestic Relations Exception in the First Instance*

Even assuming that issue preclusion did not prevent relitigation of the issue of subject matter jurisdiction in the instant suit, the Court would be bound to determine in the first instance that, for substantially the same reasons as explained by Judge Seybert in *Pappas I*, the domestic relations exception deprives this Court of subject matter jurisdiction to consider Plaintiffs' claims.

"The domestic relations exception springs from the Supreme Court's century-and-a-quarter-old recognition that '[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States[.]]" *Tait v. Powell*, 241 F. Supp. 3d 372, 376 (E.D.N.Y. 2017) (quoting *In re Burrus*, 136 U.S. 586, 593-94 (1890)). Although the exception is narrow,  it is "understood to grant to federal courts

the 'discretion to abstain from exercising jurisdiction over issues on the verge of being

matrimonial in nature as long as full and fair adjudication is available in state courts." *Tait*, 241

F. Supp. 3d at 276 (quoting *Fischer v. Clark*, No. 08-CV-3807, 2009 WL 3063313, at *2

(E.D.N.Y. Sept. 24, 2009)).

As the Court has already observed when comparing the instant action with *Pappas I*,

Anthony Pappas' grievances in the instant litigation at their core arise from Pappas'

dissatisfaction with his treatment in the state court divorce proceeding, both by the judicial

system and its officers, as well as by Maria Pappas and Attorney Kruman.  "[A] plaintiff may not

obtain federal court jurisdiction merely by rewriting a domestic dispute as a different type of

action." *Junod v. CPS of Onondaga Cty.*, No. 18-CV-1424, 2019 WL 609010, at *3 (N.D.N.Y.

Jan. 2, 2019) *report and recommendation adopted sub nom. Junod v. CPS of Onondaga Cty.*

*New York*, No. 18-CV-1424, 2019 WL 587516 (N.D.N.Y. Feb. 12, 2019).  "[C]ourts in the

Second Circuit have abstained from controversies that, regardless of how a plaintiff characterizes

them, 'begin and end in a domestic dispute.'"  *Deem v. DiMella-Deem*, No. 18-CV-11889, 2019

WL 1958107, at *12 (S.D.N.Y. May 2, 2019) (quoting *Tait*, 241 F. Supp. 3d at 377).  It is

therefore of little consequence that Plaintiff Pappas' has attempted to bring claims under the

federal election law and further has attempted to sue TD Bank, a party not directly involved with

the divorce proceeding.  Rather, as the language of the Complaint demonstrates, this suit is part

and parcel of the state court divorce proceeding, and the allegations involving Anthony Pappas'

electoral campaign and the campaign's bank account are direct consequences of the divorce

proceeding.  Pappas confirms this conclusion in his opposition papers when he states, "[i]n short,

the maliciously protracted divorce proceeding impaired plaintiff's participation in the federal

24

election process while guaranteeing his opponent's victory on Election Day, November 6, 2018."
Pls.' Opp'n. at 5.

Therefore, even if this Court were to determine that the precise jurisdictional issue presented here was not identical to that before Judge Seybert in *Pappas* I – and, as a result, issue preclusion would not require adherence to Judge Seybert's determination that the domestic relations exception deprived the Court of subject matter jurisdiction – this Court would ultimately reach the same conclusion based on the Complaint in this action.

Based on the foregoing analysis, the Court respectfully recommends to Judge Seybert that the Defendants' motions to dismiss the Complaint for lack of subject matter jurisdiction be GRANTED.

### B.     Failure to State a Claim

Even assuming the Court had subject matter jurisdiction, the instant Complaint fails to state a viable claim for relief against any defendant, for several reasons.

#### 1.     *Standard of Review*

In reviewing *pro se* pleadings in response to Rule 12(b)(6) motions to dismiss, the Court must liberally construe the claims set forth in the complaint, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  *See Aegis Ins. Servs., Inc.*, 737 F.3d at 176; *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). To state a viable claim, a plaintiff must satisfy "a flexible 'plausibility standard.'"  *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom*. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  In other words, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  The Court, therefore, does not require "heightened fact

pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the Court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss.  First, district courts are to "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679; *see id.* at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").  Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id*. at 679.  Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. at 678 (citations omitted).

In adjudicating a Rule 12(b)(6) motion, the Court must limit itself to facts alleged in the complaint, which are accepted as true; to documents attached to the complaint as exhibits or incorporated in the complaint by reference; to matters of which judicial notice may be taken; or to documents whose terms and effect are relied upon heavily in the complaint and, thus, are rendered "integral" to the complaint.  *ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir.

2014); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). To the extent "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d); *see Wrap-N-Pack, Inc. v. Eisenberg*, No. 04-cv-4887, 2007 WL 952069, at *5 (E.D.N.Y. Mar. 29, 2007). The Court limits its analysis here to the allegations of Pappas' Complaint.

### 2.   *Application*

As an initial matter, Anthony Pappas cannot raise a viable claim against Justice Lorintz because as a judicial officer, Justice Lorintz is shielded from suit by absolute judicial immunity. "It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). "In addition, as amended in 1996, § 1983 provides that 'in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.'" *Id.* (quoting 42 U.S.C. § 1983); *see Burdick v. Town of Schroeppel*, 717 Fed. App'x 92, 93 (2d Cir. 2018) (summary order); *Shtrauch v. Dowd*, 651 Fed. App'x 72, 73 (2d Cir. 2016) (summary order). Here, Pappas' allegations related to Justice Lorintz exclusively concern his judicial conduct. *See, e.g.*, Compl. ¶ 21(b) (alleging that Justice Lorintz "ignored requests for an explanation or justification for money judgments that remain in effect despite funds restrained, seized or readily available for immediate satisfaction," and has "restrained monies needed for personal living expenses and lawyer fees"). Pappas' claims against Justice Lorintz must therefore fail.

Similarly, both Justice Lorintz and the State of New York are protected from suit by the Eleventh Amendment to the United States Constitution. "The Eleventh Amendment bars federal courts from entertaining suits brought by private parties against a state in its own name."

27

*Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 157 (S.D.N.Y. 2007); *McNiece v. Connecticut*, No. 3:15-CV-1036, 2016 WL 1118249, at *2 (D. Conn. Mar. 22, 2016), *aff'd*, 692 Fed. App'x 655 (2d Cir. 2017).  "As a result, '[a] State is thus immune from suits in federal court . . . and such immunity extends to officers acting on behalf of the State.'"  *Deadwiley v. New York State Office of Children & Family Servs.*, 97 F. Supp. 3d 110, 115 (E.D.N.Y. 2015) (quoting *Winokur v. Office of Court Admin.,* 190 F. Supp. 2d 444, 448 (E.D.N.Y. 2002)).  In addition to protecting against suits for money damages, "the Eleventh Amendment bars retrospective declaratory relief against state officials."  *New York State Court Clerks Ass'n v. Unified Court Sys. of the State of New York*, 25 F. Supp. 3d 459, 468 (S.D.N.Y. 2014).  No matter the type of relief sought, because Justice Lorintz and the State of New York are immune from suit, Plaintiff Pappas' claims against these Defendants must fail.

The remaining Defendants – Maria Pappas, Attorney Kruman, and TD Bank – are private individuals and a private entity.  As such, Anthony Pappas' Section 1983 claims against them cannot proceed.  Section 1983 imposes liability on, and creates a right of action against, anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983; *see Blessing v. Freestone*, 520 U.S. 329, 340 (1997).  To raise a successful claim under Section 1983, a plaintiff must sufficiently allege "that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution" and laws of the United States.  *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 316-17 (E.D.N.Y. 2014) (quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted)).  Because Maria Pappas and Attorney Kruman are private actors, Pappas is unable to allege that any of their conduct was attributable at least in part to a person acting "under color of

state law."  Plaintiff Pappas' constitutional claims against these individuals and the bank under Section 1983 must therefore fail.

Finally, as to Plaintiffs' "federal election law" claim, Pappas does not specify under which section of Title 52 of the United States Code he purports to bring his claims.  As a result, he has failed to put forth a sufficient legal basis to state a viable claim. [5]

For the reasons stated above, Plaintiffs' Complaint fails to state a viable cause of action against any of the named Defendants.

## C.  Ability to Amend the Complaint

Although he has not submitted a proposed amended complaint, Anthony Pappas states that he "individually will move this Court for an order denying defendant [*sic*] motions for dismissal pursuant to FRCP 12(b)(1) and 12(b)(6) and an order granting leave to amend the Verified Complaint to add facts arising since its filing."  DE 36.  Whether to grant leave to amend is a decision squarely within the district court's discretion.  *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 540 (2010) ("[Rule 15(a)] gives a district court discretion to decide whether to grant a motion to amend a pleading before trial."); *MHANY Mgmt. v. Cty. of Nassau*, 843 F. Supp. 2d 287, 340 (E.D.N.Y. 2012) (noting that "it is ultimately within the sound discretion of the court whether to grant leave to amend").  A court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Iqbal v. Ashcroft*, 574 F.3d 820, 822 (2d Cir. 2009) (quoting Fed. R. Civ. P. 15(a)(2)); *Grace v. Rosenstock*, 228 F.3d 40, 56 (2d Cir. 2000) (same); *Guideone Specialty Mut. Ins. Co. v. Hapletah*, No. 05 Civ. 1401, 2006 WL 1455468, at *1 (E.D.N.Y. May 24, 2004) ("[Rule 15(a)] provides for a liberal amendment of pleadings.").

---

[5]  Additionally, there appears to be a complete lack of support for Pappas' position that he has an implied private right of action under Title 52.  *See* Pls.' Opp'n. at 5-11.

Notwithstanding this liberal standard, "[o]ne appropriate basis for denying leave to amend is that the proposed amendment is futile." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend."). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Ferrara v. Smithtown Trucking Co.*, 29 F. Supp. 3d 274, 279 (E.D.N.Y. 2014); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

Here, it is apparent to the Court that any attempt by Plaintiff Pappas to amend his Complaint would be futile. Pappas wishes to amend his Complaint to include allegations of a levy on his accounts that was issued after the Complaint was filed. He contends as follows:

> Since this action was filed, a second levy was made in November, 2018 upon funds remaining in plaintiff's federal campaign account to bring it into a negative balance. This theft occurred under authority of a state judge who refused to limit or vacate an overbroad restraining order in a divorce case. The authority was abused by the remaining defendants to complete the theft.

Pls.' Opp'n. at 6. However, these allegations pertain to Pappas' continued dissatisfaction with the manner in which the state court divorce proceeding was adjudicated. Any amendments would therefore remain focused on what Plaintiff Pappas sees as a "biased" system and the flawed disposition it rendered. As a result, the gravamen of the suit would remain as it exists now, and the suit would remain within the scope of the domestic relations exception to federal jurisdiction.

The Court respectfully recommends to Judge Seybert that Anthony Pappas' cross-motion to amend his Complaint be DENIED.

30

D.      **Limited Filing Injunction**

The State of New York as well as Maria Pappas and Attorney Kruman ask the Court to

issue a limited filing injunction against Anthony Pappas.  "A district court may, in its discretion,

impose sanctions against litigants who abuse the judicial process."  *Shafii v. British Airways,*

*PLC,* 83 F.3d 566, 571 (2d Cir. 1996); *Dekom v. Fannie Mae*, No. CV 17-2712, 2019 WL

1259103, at *11 (E.D.N.Y. Feb. 26, 2019), *report and recommendation adopted*, No. 17-CV-

2712, 2019 WL 1403116 (E.D.N.Y. Mar. 28, 2019).  District courts consider the following

factors when determining whether to restrict a litigant's future access to the courts through a

filing injunction:

> (1) the litigant's history of litigation and in particular whether it
> entailed vexatious, harassing or duplicative lawsuits; (2) the
> litigant's motive in pursuing the litigation, e.g., does the litigant have
> an objective good faith expectation of prevailing?; (3) whether the
> litigant is represented by counsel; (4) whether the litigant has caused
> needless expense to other parties or has posed an unnecessary
> burden on the courts and their personnel; and (5) whether other
> sanctions would be adequate to protect the courts and other parties.

*Safir v. U.S. Lines, Inc.,* 792 F.2d 19, 24 (2d Cir. 1986); *Mantis Transp. v. Kenner*, 45 F. Supp. 3d

229, 256 (E.D.N.Y. 2014) (quoting *Safir*, 792 F.2d at 24).

While Pappas is not represented by counsel, the Court finds that the other four factors

(*i.e.*, factors (1), (2), (4) and (5)) favor imposition of a limited filing injunction.  As to Pappas'

history of litigation, the instant lawsuit is nearly identical to *Pappas I*.  Pappas unsuccessfully

appealed Judge Seybert's decision in *Pappas I* to the Second Circuit.  Prior to commencing the

instant action, Pappas moved pursuant to N.Y. C.P.L.R. Article 78 to compel Justice Lorintz to

vacate the purported 2011 gag order in the divorce proceeding.  *See* DE 34-9.  The New York

State Supreme Court, Appellate Division, Second Department denied Pappas' petition in an

Order dated November 1, 2017.  *See id*.  After filing the instant action and unsuccessfully

31

moving for a temporary restraining order before Judge Seybert, Pappas filed a petition for a writ of mandamus to the Second Circuit in an attempt to gain the same extraordinary relief Judge Seybert had denied him.  The Second Circuit denied his petition, finding that he failed to "demonstrate that exceptional circumstances warrant the requested relief."  DE 41.  Pappas then filed a petition for a writ of certiorari to the United States Supreme Court, seeking review of the Second Circuit's denial of his mandamus petition.  On May 20, 2019, the Supreme Court denied his petition.  Pappas' prodigious and extensive history of litigation weighs in favor of issuing a filing injunction against him.

As to Pappas' litigation motives, it does not appear that Pappas had an objective good faith belief that he would prevail in his litigation activities post-*Pappas I*.  As observed, the instant suit is nearly identical to *Pappas I*, in which Judge Seybert stated that, even if the Court had jurisdiction, Pappas failed to state a claim against any of the defendants.  *Pappas I*, 2014 WL 3890149, at *4.  Specifically, the judicial defendants were immune from suit, and Maria Pappas and Attorney Kruman were not liable under Section 1983 because they are private actors.  *See id.* While Plaintiff Pappas argues that the domestic relations exception should not apply to the instant suit, he makes no serious attempt to cure the immunity issue or the private actor issue with respect to Maria Pappas and Attorney Kruman.  In the Court's view, it is unlikely Plaintiff Pappas harbored an objective good faith belief that the instant suit would be successful following Judge Seybert's determination in *Pappas I*.  His forays to the Second Circuit and United States Supreme Court appear similarly and objectively without merit.

With respect to whether Anthony Pappas has caused needless and unreasonable expense to other parties or the Court and its personnel, the answer appears to be yes.  It is difficult to dispute that Pappas' filings, in all of their iterations, have occupied significant time of the parties

and the Court.  The fact that his filings reassert arguments the Court has previously declined to credit is indicative of the "needless" expense Pappas' activities have caused to accrue.  Such expenditures of time and energy here – both by the Court and the litigants – do not meet a standard of reasonableness.  Moreover, Pappas' conduct appears indicative of future activity, namely, to continue to seek relief which this Court cannot grant.  In the Court's view, this illustrates why money sanctions would not be effective.

Finally, although Pappas has been proceeding *pro se*, he is, by his own account, not an unsophisticated litigant.  Rather, Anthony Pappas is a professor at a local university and is a former congressional candidate.[6]  *See* Compl. ¶ 2.  In short, although he has proceeded without the assistance of counsel, he has a substantial educational background and extensive experience with both state and federal courts.

Having considered the factors enumerated in *Safir*, this Court concludes that the imposition of an injunction against Anthony Pappas preventing him from commencing actions in this Court, on behalf of himself or Anthony Pappas for Congress, is warranted.  *See Mantis Transp.*, 45 F. Supp. 3d at 256; ); *Dekom*, 2019 WL 1259103, at *11.  Before imposing a filing injunction, however, a court must first provide a litigant with notice and an opportunity to be heard.  *Mantis,* 45 F. Supp. 3d at 256-57; *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998) (per curiam) ("The unequivocal rule in this circuit is that the district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an

---

[6]  According to a St. John's University faculty profile submitted with the State of New York's motion to dismiss, Pappas is an Associate Professor of Economics and Finance.  He received a B.S. in Economics and Mathematics from the Massachusetts Institute of Technology, an M.A. in Economics from Yale, an M.Phil. in Economics from Yale, and a Ph.D. in Economics from Yale.  *See* DE 32-3.

opportunity to be heard."); *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (citing *Moates*, 147 F.3d at 208).

Courts in the Second Circuit have dealt with the notice provision in various ways. *See, e.g., Mantis*, 45 F. Supp. 3d at 257; *Dekom*, 2019 WL 1259103, at *11. In *Dekom*, the magistrate judge in her report and recommendation recommended that the plaintiff be directed to show cause as to why he should not be barred from filing future complaints related to a foreclosure action without leave of a court. 2019 WL 1259103, at *11. In his order adopting the report and recommendation, the district judge gave the plaintiff a specific deadline to file any objections to the recommendation that the court issue an order to show cause with respect to a litigation injunction. *See Dekom v. Fannie Mae*, No. 17-CV-2712, 2019 WL 1403116, at *1 (E.D.N.Y. Mar. 28, 2019).

In *Mallgren v. Burkholder*, 52 F. Supp. 3d 490 (E.D.N.Y. 2014), the district court issued an order directing plaintiff to show cause why he should not be barred from filing future complaints without leave of the court. 52 F. Supp. 3d at 497. The court ultimately found that the plaintiff's "Affirmation Showing Cause" did not offer any valid reason why the plaintiff should not be barred from filing future *in forma pauperis* complaints and that the plaintiff's frequent filings detracted from the legitimate cases before the Court. *Id*. As such, the court determined that plaintiff's history warranted the imposition of a filing injunction. *See Mantis*, 45 F. Supp. 3d at 257 (directing the *pro se* plaintiff to file affidavit stating why an order should not issue enjoining plaintiff from filing any new civil action or proceeding without first obtaining leave of the court by requiring the plaintiff to take specific enumerated steps).

This Court entrusts these considerations to Judge Seybert for her ultimate determination concerning notice with respect to a filing injunction.

V.   CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Seybert that (1) Defendants' motions to dismiss for lack of subject matter jurisdiction be GRANTED, and Plaintiffs' Complaint be DISMISSED, and (2) Plaintiffs' cross-motion to amend be DENIED. The Court further recommends that Anthony Pappas be directed to show cause why he should not be barred from filing future complaints without first obtaining leave of the Court.

VI.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  In the case of a plaintiff proceeding *pro se*, the plaintiff must file his objections in writing with the Clerk o fthe Court within the 14-day period noted above.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert.  Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the 14-day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Counsel for the State of New York is directed to serve a copy of this Report and Recommendation upon the pro se plaintiff forthwith by overnight mail and first-class mail and to file proof of such service on ECF by the close of business on August 6, 2019**.

**SO ORDERED**.

Dated: Central Islip, New York
      August 2, 2019

<u>/s/ A. Kathleen Tomlinson</u>
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge